# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 02-3743

PERCY ALLEN, YVETTE CLINKSCALE,
PAUL GERGOIRE, et al.,

*Plaintiffs-Appellants,*

v.

CITY OF CHICAGO,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 7673—**Joan B. Gottschall**, *Judge.*

———————

ARGUED SEPTEMBER 25, 2003—DECIDED DECEMBER 9, 2003

———————


Before CUDAHY, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* African-American and Hispanic
police officers employed by the City of Chicago (the "City")
filed a complaint against the City for engaging in discrim-
inatory promotions in violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The district
court certified two subclasses of officers adversely affected
by the 1998 promotion process. One subclass moved for
summary judgment, and the City cross-moved for summary
judgment as to both subclasses. The district court granted
the City's motion as to both subclasses. The subclasses

appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I
## BACKGROUND

Throughout the last three decades, minority and non-minority police officers have challenged the City of Chicago's hiring and promotion procedures as discriminatory. In response, the City has implemented various remedial measures, including quotas, race norming, affirmative action, promotional examinations and merit selection procedures. The history of these challenges and the City's response is set forth thoroughly in *Barnhill v. City of Chicago, Police Department*, 142 F. Supp. 2d 948, 950-56 (N.D. III. 2001).[1] That background also has been noted in *Adams v. City of Chicago*, 135 F.3d 1150, 1152 (7th Cir. 1998).

This appeal arises from a challenge to the 1998 sergeant's promotional process by minority officers who were not selected for promotion from officer to sergeant. Subclass A plaintiffs are minority officers who failed a written qualifying test and were not eligible for promotions based on merit or assessment scores. Subclass B plaintiffs are minority officers who passed the written qualifying test but were not promoted on the basis of merit or assessment scores. The 1998 sergeant promotional process had a disparate impact on minority officers, and the officers appeal the process as discriminatory.

---

[1] *Barnhill v. City of Chicago, Police Department*, 142 F. Supp. 2d 948 (N.D. III. 2001), also involves a challenge to the 1998 sergeant promotions; the *Barnhill* challenge was brought by white male officers. *Id.* at 950.

## A. Facts

### 1. The 1998 Process for Sergeant Promotions

After litigation involving the 1994 sergeant and lieutenant promotional processes,[2] the City established the Police Department Promotion and Testing Task Force (the "Task Force"). The Task Force reviewed the work of an earlier Blue Ribbon Panel which had also met and made recommendations regarding selection procedures for the Chicago Police Department (the "CPD"). One purpose of the Task Force was to reassess the status of the promotional processes in the CPD.

After meeting, the Task Force made various recommendations as to the components of the promotional process to sergeant. The Task Force recommended that the City employ "several different types of examinations to test a broader set of knowledge, skills and abilities." R.54, Ex.1 at 5. One of the examinations recommended by the Task Force was a written qualifying test "designed to evaluate skills, knowledge and abilities that sergeants . . . need on their first day on the job." *Id.* at 6. The Task Force noted: "Everyone who achieves a passing score on the qualifying examination should be eligible for further consideration in the promotional process." *Id.* at 7.

---

[2] *See Adams v. City of Chicago*, 135 F.3d 1150, 1155 (7th Cir. 1998) (holding that the plaintiffs could not establish irreparable harm to justify a preliminary injunction preventing allegedly discriminatory promotions to sergeant); *Brown v. City of Chicago,* 8 F. Supp. 2d 1095, 1113 (N.D. Ill. 1998) (holding that the City violated Title VII when a merit promotions element was dropped from the lieutenant promotional process because merit promotions combined with rank order promotions presented an equally valid, less discriminatory alternative), *aff'd sub nom. Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000).

The Task Force also recommended the inclusion of "a merit selection process" in the promotional process and explained its recommendation as follows:

> The qualifying examination can test knowledge, skills and abilities, but it cannot identify police men and women who have exhibited exceptional leadership in the field. Using the existing merit selection process for detectives as a model, the Department should identify police officers who have demonstrated superior ability, responsibility and dedication to police service. In order to identify these exceptional leaders, the CPD should institute a merit selection process for promotions to sergeant . . . as an addition to a qualifying examination.

*Id.* The Task Force specifically stated that "[m]erit selection candidates should still be required to take and pass the qualifying exam." *Id.* It also recommended that the percentage of promotions made through merit selection be limited to thirty percent. The chair of the Task Force later testified that the thirty-percent ceiling on merit selection was a "hit and miss" number but that it was based on the previous successfulness of twenty-percent merit promotions to detective and youth officer. R.57 at ¶ V.05.

The City employed Jeanneret and Associates, outside consultants, to design the promotional exam. After conducting a job study, the consultants initially proposed a promotional process that differed in certain respects from the recommendations made by the Task Force. The process designed by the consultants included only a pass-fail written qualifying test and a separate written assessment exercise designed to measure knowledge, skills, abilities and personal characteristics required in the sergeant position. Individuals who passed the qualifying test would be eligible to take the assessment exercise, and promotions would be made in rank-order based on performance on the assessment exercise.

Given the Task Force recommendations, the City asked the consultants to include a merit selection component with job-related validity. In response, the consultants reviewed the sergeant job analysis with subject matter experts and defined factors such as leadership, mentoring, decision-making and interpersonal relations that are important to the sergeant position but less easily tested by the assessment exercise. The consultants and representatives of the CPD then designed a nomination process to identify candidates who possessed these traits. Passage of the written qualifying test was a prerequisite to promotion through the merit selection process.

The 1998 promotional process design ultimately adopted by the City included a written qualifying test, an assessment exercise and a merit selection component. The written qualifying test, a multiple choice examination designed to test knowledge necessary for the first day on the job, was developed by content-validation.[3] The subject matter experts and consultants recommended the qualifying score, which represented the score a minimally qualified sergeant would be expected to obtain. Individuals who passed the written qualifying test were eligible for promotion through either performance on the assessment exercise or merit selection.

---

[3] Content-validation is one means of showing the validity of a selection procedure under the Equal Employment Opportunity Commission ("EEOC") Uniform Guidelines on Employee Selection Procedures. *See* 29 C.F.R. § 1607.5(B) ("Evidence of the validity of a test or other selection procedure by a content validity study should consist of data showing that the content of the selection procedure is representative of important aspects of performance on the job for which the candidates are to be evaluated.").

The assessment exercise, designed to ensure that sergeant candidates had the knowledge, skills, abilities and personal characteristics required for situations sergeants might encounter on their first day on the job, also was developed by content-validation. The assessment exercise was a simulation exercise requiring written responses. It focused on work-related behaviors and activities, such as officer supervision, subordinate evaluation, review of reports and situational judgment.

The merit selection component involved a three-tier process. Commanders were permitted to nominate between one and five members of their chain of command who demonstrated exemplary performance with respect to the merit-based traits identified by the subject matter experts and consultants. Nominators were required to attend training; were instructed to avoid biases, stereotypes and assessment errors, such as personal likes and dislikes; and were required to submit nominations in a specified format. Nominators were allowed to assess and submit only their most qualified officers and were held accountable for the nominations submitted and the accuracy of information contained therein. A group of high-level CPD command personnel, the Academic Selection Board ("ASB"), then reviewed the nominations and other data on the nominees. The ASB forwarded a select number of the nominees to the CPD Superintendent, who made the final decisions on merit-based promotions. Merit promotions were limited to thirty percent of the total number of promotions made.

### 2. Results of the 1998 Promotions to Sergeant

In January of 1998, 3201 officers took the written qualifying test: 1672 were white; 1074 were African-American; 414 were Hispanic; and 41 were of other races. Of the officers

taking the written qualifying test, 2682 passed: 1518 of whom were white; 787 of whom were African-American; 340 of whom were Hispanic; and 37 of whom were of other races. The success rate was 90.8% for whites, 73.3% for African-Americans, 82.1% for Hispanics and 90.2% for those of other races. Under a test for statistical significance, the written qualifying test had a disparate impact on African-Americans.[4]

A total of 251 officers were subsequently promoted to sergeant. 178 were promoted on the basis of performance on the rank-order assessment exercise. Of this number, 140 were white; 26 were African-American; 10 were Hispanic; and 2 were of other races. The success rate was 9.8% for whites, 3.4% for African-Americans, 3.1% for Hispanics and 5.7% for those of other races. Under the Equal Employment Opportunity Commission ("EEOC") Uniform Guidelines, the assessment exercise had a disparate impact on African-American and Hispanic officers.[5]

---

[4] African-Americans passed at a rate of 80.7% of the white rate, and Hispanics passed at a rate of 90.4% of the white rate. The written qualifying test thus did not have a disparate impact on either African-Americans or Hispanics under the EEOC 80% rule. *See* 29 C.F.R. § 1607.4(D) ("A selection rate for any race, sex, or ethnic group which is less than four-fifths (4/5) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.").

[5] The success rate for African-Americans was 34.7% of the white rate, and the success rate for Hispanics was 31.6% of the white rate; thus, both groups passed at a rate lower than 80% of the white rate.

Seventy-three officers were promoted on the basis of merit selection. Of this number, 40 were white; 23 were African-American; 9 were Hispanic; and 1 was of another race. The success rate was 2.9% for whites, 3.0% for African-Americans, 2.7% for Hispanics and 2.9% for those of other races. Merit promotions had no disparate impact on any racial subset under the EEOC Uniform Guidelines.[6]

African-American and Hispanic officers, who comprise Subclass B, challenged the thirty-percent ceiling on merit promotions as discriminatory. They argued that merit promotions should be made at a greater percentage of the total number of promotions made. African-American officers, who comprise Subclass A, challenged the written qualifying test as discriminatory. They argued that the City should make merit promotions without requiring the officers to pass the written qualifying test.

## B. Proceedings in the District Court

Upon Subclass B's motion for summary judgment and the City's cross-motions for summary judgment as to both subclasses, the district court granted summary judgment to the City on the claims of Subclass A and Subclass B. The district court determined that Subclass B had not established an equally valid, less discriminatory alternative, and thus the City was entitled to summary judgment. With respect to the claim of Subclass A, the court found that the merit

---

[6] African-Americans had the highest success rate; the white success rate was 96.7% of the African-American rate, and the Hispanic success rate was 90.0% of the African-American rate. Thus, no group passed at a rate lower than 80% of any other group.

selection component was validated only with the written qualifying test prerequisite. Because there was no showing of the stand-alone validity of the merit component, the City was entitled to summary judgment on Subclass A's claim as well. The Subclass A and B plaintiffs timely appealed.

## II

## DISCUSSION

### A. Standard of Review

This court reviews de novo the district court's grant of a motion for summary judgment, as well as the district court's disposition of cross-motions for summary judgment. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). We view all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* In considering cross-motions for summary judgment, " 'our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.' " *Id.* (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Summary judgment is appropriate when there is no genuine issue of material fact, and the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### B. Subclass B's Disparate Impact Claim

Subclass B officers challenge the thirty-percent ceiling on merit promotions as the "particular employment practice" that caused a disparate impact in violation of Title VII. *See*

42 U.S.C. § 2000e-2(k).[7] In the district court, Subclass B officers proposed that thirty-five, forty or fifty-percent merit-based promotions would be practicable. In their brief to this court and at oral argument, the officers argued that seventy percent of promotions should be merit-based.

## 1. Burden of Proof

To succeed on a disparate impact claim, plaintiffs bear the burden of showing that a particular employment practice causes a disparate impact on the basis of race. Once this impact is shown, the defendant must demonstrate that the

---

[7] The relevant portions of 42 U.S.C. § 2000e-2(k) provide the following:

**(k) Burden of proof in disparate impact cases**

**(1)(A)** An unlawful employment practice based on disparate impact is established under this subchapter only if—

**(i)** a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

**(ii)** the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

* * *

**(C)** The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

practice is "job related" and "consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). If the defendant makes this showing, plaintiffs can still prevail by demonstrating that an alternative employment practice exists, and the defendant refuses to adopt it. *See* 42 U.S.C. § 2000e-2(k)(1)(A); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).

As we noted earlier, in this case, promotions made on the basis of the assessment exercise did have a disparate impact on African-American and Hispanic officers. The officers agree, however, that the assessment exercise component of the promotional process was job related and consistent with business necessity. R.66 at ¶ 96. Therefore, the only remaining issue in the burden-shifting analysis is the existence of a substantially equally valid, less discriminatory alternative employment practice.[8] *See* 42 U.S.C. § 2000e-2(k)(1)(A); 29 C.F.R. § 1607.3(B) ("Where two or more selection procedures are available which serve the user's legitimate interest in efficient and trustworthy work-

---

[8]  In their brief, the officers argue that they challenge "whether the thirty percent ceiling on the non-discriminatory merit promotions is job related and consistent with business necessity." Appellants' Br. at 10. As the City notes, the officers previously moved the district court to limit the issues "to the question of whether making more than 30% of the promotions through merit selection would be an 'equally valid, less discriminatory alternative' under 42 U.S.C. 2000e-2(k)(1)(A)(ii)." R.24 at 1. The district court granted this motion. As a result, questions as to the job relatedness and business necessity of the promotional process components were not raised below and are waived on appeal. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("It is well-established that a party waives the right to argue an issue on appeal if he fails to raise that issue before the trial court.").

manship, and which are substantially equally valid for a given purpose, the user should use the procedure which has been demonstrated to have the lesser adverse impact.").

Under the framework of 42 U.S.C. § 2000e-2(k)(1)(A)(ii), the officers must demonstrate the existence of an equally valid, less discriminatory employment practice. As a result of the 1991 Amendments to the Civil Rights Act, Pub. L. 102-166, § 105(a), 105 Stat. 1071, 1074 (1991) (codified at 42 U.S.C. § 2000e-2(k)), plaintiffs seeking to demonstrate a less discriminatory alternative must do so under the law that existed prior to the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). *See* 42 U.S.C. § 2000e-2(k)(1)(C); *see also Price v. City of Chicago*, 251 F.3d 656, 660 (7th Cir. 2001). Prior to *Wards Cove*, the Supreme Court expressed the controlling principle in *Albemarle*: "If an employer does then meet the burden of proving that its tests are 'job related,' it remains open to the complaining party to show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in 'efficient and trustworthy workmanship.'" *Albemarle*, 422 U.S. at 425 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)). The proposed alternative must be available, equally valid and less discriminatory. *See Bryant v. City of Chicago*, 200 F.3d 1092, 1094 (7th Cir. 2000).

### 2. Assessment of the Officers' Alternative

Before turning to the merits of the officers' proposed alternative, we first consider an initial matter. Throughout the course of this litigation, the officers have proposed four different percentages of increased merit promotions: Thirty-five, forty, or fifty percent was suggested at the district court

level, and seventy percent was argued on appeal. These variations of the proposed alternative raise two separate concerns. First, the statutory scheme requires plaintiffs to demonstrate a viable alternative and give the employer an opportunity to adopt it. *See* 42 U.S.C. § 2000e-2(k)(1)(A). A vague or fluctuating proposed alternative ordinarily would frustrate this statutory scheme. Here, however, the City has rejected *any* increased use of merit-based promotions; thus the officers' ambivalence as to the specific increased percentage has not frustrated entirely the City's opportunity to adopt a less discriminatory alternative. Nonetheless, we share the concerns of the district court that "such a vague and indefinite proposal" may not qualify as an "alternative employment practice," the existence of which the officers have the burden to demonstrate. R.70 at 7. Second, the officers' seventy-percent merit-based proposal was raised for the first time on appeal. Because the seventy-percent proposal was not raised before the district court, we generally would not consider it.

Despite these concerns, we assume for purposes of this appeal that the officers' consistent advocacy of *some* increased percentage of merit-based promotions constitutes a proposed "alternative employment practice." *Cf. Niedert v. Rieger*, 200 F.3d 522, 527-28 (7th Cir. 1999) (noting that issues raised for the first time on appeal are generally not decided but proceeding to merits where both parties addressed the issue in their briefs and at oral argument). To prevail, the officers therefore must demonstrate that an increased percentage of merit-based promotions would be of substantially equal validity as merit-based promotions at the thirty-percent level and that increased merit-based promotions would be less discriminatory than the present promotion arrangement. The officers have established neither proposition.

The City and the officers agree that merit-based promotions at the thirty-percent level are of substantially equal validity as assessment-based promotions. *See* R.57 at ¶ IV.13-15; R.66 at ¶ 170. The parties disagree, however, on the issue of whether merit-based promotion at an increased level would be of substantially equal validity as seventy-percent assessment-based promotions. The officers effectively bear the burden of establishing that the last officer promoted under an increased merit-based selection process would be roughly as qualified as the officer with the current lowest score on the assessment exercise. *See Albemarle*, 422 U.S. at 425; *Bryant*, 200 F.3d at 1094.

To meet this burden, the officers rely upon the City's defense of the thirty-percent merit selection component in this and other litigation. *See Barnhill v. City of Chicago, Police Dep't*, 142 F. Supp. 2d 948 (N.D. Ill. 2001) (defending the merit selection process used in 1998 promotions against a challenge brought by white officers). The officers cannot, however, rely entirely on the validity of merit promotions at the thirty-percent level. As the officers admit, increasing merit-based promotions would require a different merit-based selection procedure. Indeed, under the officers' alternative process for increased merit selection at the seventy-percent level, nominators would be required to select nearly twice as many individuals so that the ASB might cull the same percentage. Moreover, under the officers' proposal, the Superintendent would have no role. Significantly, the record contains evidence that performance-based selection systems have recognized limitations, such as being skewed toward the top end of the scale and encouraging inflated ratings by supervisors who seek to obtain awards for subordinates. As the number of nominees increase, those limitations become more problematic. Because increasing the percentage of merit-based promotions actually creates

a different merit selection procedure with increased potential for evaluation error, the officers must separately show the substantially equivalent validity of increased merit promotions. The officers do not attempt to do so.

Instead, the officers submit that they "should not be required to come forward with evidence to show a correlation between their alternative procedure and job performance." Appellants' Reply Br. at 2. This argument directly contradicts their burden under the framework of 42 U.S.C. § 2000e-2(k)(1)(A)(ii) and *Albemarle*, 422 U.S. at 425.[9] Without any evidence that the officers' alternative of increasing merit promotions would lead to a workforce substantially equally qualified, we cannot accept the officers' alternative as substantially equally valid.

The officers make a related argument, however, that warrants consideration. They maintain that the thirty-

---

[9] We note that the officers did argue the feasibility of increased nominations. The problem is that this feasibility alone does not carry the officers' burden. The ability of a nominator to select more candidates simply does not answer whether the last merit-based officer promoted would be roughly as qualified as the last score-based officer promoted. A mere assertion that increased merit promotions would result in equally qualified officers being promoted to sergeant does not meet the officers' statutory burden. *Cf. Gillespie v. State of Wisconsin*, 771 F.2d 1035, 1045 (7th Cir. 1985) (holding that the plaintiff failed to establish an alternative selection procedure because he failed to demonstrate that any of his hypothetical alternatives would have measured adequately an applicant's ability to communicate in English and analyze information). Furthermore, the City argues that although nominators can select exceptionally qualified officers, it is more difficult for nominators to differentiate between officers who are merely qualified.

percent ceiling on merit-based promotions is arbitrary, given its "hit and miss" characterization by the chair of the Task Force. The City responds that the thirty-percent level was based on the Task Force's recommendation, which in turn represented a conservative increase from the twenty-percent level which had been successful in the context of promotions to other ranks. The City was also aware, however, of the limitations of nomination-based procedures and their increased prevalence as the number of nominations rise. Thus, the record indicates that the City deliberately chose a slightly increased percentage of merit-based promotions than used in the past while cognizant of the limitations of performance-based selection systems. We agree with the district court that the thirty-percent level cannot therefore fairly be characterized as arbitrary. In the absence of sufficient evidence that a higher percentage would work effectively, the City was justified in making a prudential judgment based on its prior experience.

In *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), Justice O'Connor, writing for the plurality, noted that "[f]actors such as the cost or other burdens of proposed alternative selection devices are relevant in determining whether they would be equally as effective as the challenged practice in serving the employer's legitimate business goals." *Id.* at 998. Increasing merit-based promotions, particularly to the level of seventy percent as suggested by the officers on appeal, would require nominators to recommend nearly twice as many officers and would require the ASB to review nearly twice the number of applications. This increased burden must be weighed against the distinct possibility that a higher percentage of merit-based promotions would not be as equally effective in achieving the City's goals. *See Clady v. County of Los Angeles*, 770 F.2d 1421, 1432 (9th Cir. 1985) ("Financial concerns are legitimate needs of the employer.").

Thus, given the officers' failure to establish the validity of merit promotions at an increased level, the reasonableness of the thirty-percent level, and the burden that substantially increased merit-based promotions would entail, we must conclude that the officers have not met their burden of establishing that increased merit-based promotions represent an equally valid alternative. We repeat the district court's caveat, however, that a higher percentage of merit-based promotions may in fact be valid, and we emphasize the City's responsibility to re-examine the promotional process for currency.[10] We hold only that the officers have not carried their burden as to the validity of increased merit promotions.

Even if the officers had shown that increasing merit-based promotions would be equally valid, they also would have to demonstrate that such a procedure would be less discriminatory. *See* 42 U.S.C. § 2000e-2(k)(1)(A)(ii); *see also* *Albemarle*, 422 U.S. at 425. The officers rely upon the fact that the merit-based sergeant promotions did not have a disparate impact nor did previous merit-based promotions in

---

[10] The Uniform Guidelines on Employee Selection Procedures require reasonable review of valid selection methods which have a disparate impact. *See* 29 C.F.R. § 1607.3(B) ("[W]henever a validity study is called for by these guidelines, the user should include, as a part of the validity study, an investigation of suitable alternative selection procedures and suitable alternative methods of using the selection procedure which have as little adverse impact as possible, to determine the appropriateness of using or validating them in accord with these guidelines. If a user has made a reasonable effort to become aware of such alternative procedures and validity has been demonstrated in accord with these guidelines, the use of the test or other selection procedure may continue until such time as it should reasonably be reviewed for currency.").

other ranks. From this evidence, the officers argue that increased merit-based promotions would be less discriminatory than the process employed.

Although past merit selections did not have a disparate impact, this history is the only evidence to suggest that a non-discriminatory pattern would result from an increased level of merit-based promotions. This court previously has noted the potential objection to subjective components of evaluation in selection procedures. *See Bryant*, 200 F.3d at 1100. Past success at lower levels of merit-based promotions merely predicts, but does not establish, success at higher levels of merit-based promotions. We cannot require the City to increase its merit-based promotions on mere speculation.[11]

To survive the City's summary judgment motion and to prevail on their own motion, the officers were required to specify an alternative, prove that the alternative was equally

---

[11] We note that, in *Brown v. City of Chicago*, 8 F. Supp. 2d 1095 (N.D. Ill. 1998), *aff'd sub nom. Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000), the district court found that a combined process of assessment-based promotions and merit-based promotions represented a less discriminatory alternative than assessment-based promotions alone. *Id.* at 1113. In that case, however, the finding was based on more than a prediction. The merit-based promotion candidates had been identified but were not promoted because of a state court injunction against the City's use of merit-based promotions. *Id.* at 1111. Both parties agreed that implementing merit promotions represented a valid, less discriminatory alternative, but the City argued that the state court injunction prevented its implementation. *Id.* at 1112. The district court found that the alternative was available despite the state court injunction, *id.* at 1113, and that ruling was not appealed, *see Bryant*, 200 F.3d at 1100.

valid and prove that the alternative was less discriminatory. The officers did not meet their burden. The district court properly granted summary judgment to the City on the claim of Subclass B.

### C. Subclass A's Claim: Merit Promotions Without the Qualifying Test Prerequisite

The same burden-shifting analysis that applied to Subclass B's claim applies to Subclass A's claim. *See* 42 U.S.C. § 2000e-2(k)(1)(A); *Albemarle*, 422 U.S. at 425; *Bryant*, 200 F.3d at 1094. Subclass A officers challenged the written qualifying test prerequisite to merit promotions. The City conceded that the qualifying test had an adverse impact on African-Americans, and the officers agreed that the qualifying test was job related and consistent with business necessity. Subclass A officers then proposed that merit promotions be made without requiring a passing score on the written qualifying test. As with the claim of Subclass B, the parties disagree only as to whether the officers' proposal represents a substantially equally valid, less discriminatory alternative.

To survive summary judgment, the officers must demonstrate a genuine issue of material fact as to whether merit promotions with no qualifying score prerequisite would be substantially equally valid as merit promotions with the qualifying score prerequisite. They must also demonstrate a genuine issue of fact as to whether such promotions would be less discriminatory. The officers lack evidence to establish either proposition.

In the burden-shifting analysis, the officers bear the burdens of production and persuasion as to whether the alternative selection device they propose is a valid, less discriminatory alternative. *See* 42 U.S.C. § 2000e(m); *id.*

§ 2000e-2(k)(1)(A)(ii). Because the officers bear the burden of proof, the City is not required in its motion for summary judgment to produce evidence showing the absence of a genuine issue of material fact on these elements. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). Rather, the City can point to the officers' lack of admissible evidence. *See id.* at 325. Thus, the City argues that the officers lack any evidence to establish that merit procedures alone would be substantially equally valid as merit promotions dependent upon a qualifying score. The written qualifying test was designed to measure the skills, knowledge and abilities required by a minimally qualified sergeant on the first day of the job; the merit promotions were validated with the qualifying test prerequisite. The City argues therefore that there is no evidence that merit promotions alone would be equally valid: Without an initial assessment of job knowledge, skills and abilities, an officer who lacked the minimum level of competence might be promoted.

The officers argue that nominators were trained to assess meritorious traits and could also have been trained to assess job knowledge, skills and abilities. The officers have provided no evidence, however, to demonstrate that the nominators are capable of assessing these prerequisites. In *Gillespie v. State of Wisconsin*, 771 F.2d 1035 (7th Cir. 1985), this court noted that the plaintiff's "bare assertion" about the possibility of using a short answer test, a multiple choice test, or another commercially developed test "fails to satisfy the plaintiff's burden of demonstrating that other tests or selection devices without a similar undesirable racial effect would also serve the employer's legitimate interests." *Id.* at 1045. The officers have provided nothing more here than did the plaintiff in *Gillespie*. The officers' "bare assertion" about the ability of raters to assess job knowledge does not create a genuine issue of material fact as to the comparable

validity of merit procedures alone. *See also Allen v. Entergy Corp.*, 181 F.3d 902, 906 (8th Cir. 1999) (holding that the district court properly entered summary judgment against the plaintiffs when they made no showing that their alternative "would be an equally accurate predictor of success" in the subject job position).

As discussed in relation to Subclass B's claim, even if the officers had presented evidence of validity, they still have presented insufficient evidence that their alternative would be less discriminatory. There is no way of knowing who would be promoted were the merit-based promotions made without regard to passage of the written qualifying test. *Cf. Brown v. City of Chicago*, 8 F. Supp. 2d 1095, 1113 (N.D. Ill. 1998), *aff'd sub nom. Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000) (finding percentage of merit-based promotions less discriminatory when merit-selection results were known). Nor is there evidence that merit selection is inherently less likely to cause a disparate impact. *Cf. Bryant*, 200 F.3d at 1100 (noting potentially objectionable subjective component). The non-discriminatory history of past merit selection in the CPD is not sufficient evidence to withstand the City's motion for summary judgment.

Because the officers have not demonstrated genuine issues of material fact as to the validity and less discriminatory nature of their proposed alternative, the district court properly granted summary judgment to the City on the claim of Subclass A.

## Conclusion

The Subclass B officers did not prove that increased merit promotions represented an equally valid and less discriminatory alternative, and the district court properly denied summary judgment to the officers and properly granted

summary judgment to the City on their claim. The Subclass A officers did not establish a genuine issue of material fact as to whether merit procedures alone represented an equally valid and less discriminatory alternative, and the district court properly granted summary judgment to the City on their claim. For these reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*