In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 16-3893 & 17-1045

TATE & LYLE AMERICAS LLC, and AMERICAN GUARANTEE AND
  LIABILITY INSURANCE CO.,

*Plaintiffs-Appellees,*

*v.*

GLATT AIR TECHNIQUES INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:13-cv-02037-EIL — **Eric I. Long**, *Magistrate Judge.*

---

ARGUED JUNE 1, 2017— DECIDED JULY 13, 2017

---

Before BAUER, POSNER, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, which for simplicity we'll call just Tate, sells ingredients used in the food and beverage industry. The defendant, Glatt, a member of a substantial German conglomerate called the Glatt group, sells processing equipment to the food industry. In 2008 Tate and

Glatt made a contract whereby Glatt would for $7,042,022 design and build a three-story-tall food-manufacturing machine called a granulator, which would be installed on Tate's premises in Sycamore, Illinois. The following year, after the granulator was up and running, it caught fire and was seriously damaged. The product being processed at the time of the fire was a corn product that was flammable and during processing gave off flammable dust.

More than three years later Tate brought this lawsuit against Glatt, basing federal jurisdiction on diversity of citizenship and claiming that the fire had resulted from defects in the granulator—either failure to install a fire-suppression system or defects in filters essential to filtering the flammable dust from the exhaust of the machine.

Tate sought damages of $7,784,767 for damage to its property, repair costs, and lost profits. Its insurer, American Guarantee, paid it $2,743,248, and then joined the litigation to recover that expenditure from Glatt. Glatt counterclaimed against Tate for $976,500, the unpaid balance on the contract for the granulator, although it later reduced its damages request to $700,000. The parties agreed to allow a magistrate judge, Eric Long, to preside, who ruled that a provision of the contract between Tate and Glatt forbidding the recovery of "special damages" prohibited Tate (and therefore its insurer) from recovering lost profits. As a result of this ruling, Tate reduced its damages claim to $972,000 and the insurer reduced its claim to $853,254.

The case went to a jury, which awarded the insurer $853,254, but Tate and Glatt nothing. But Tate was entitled, the judge ruled, to recover some attorneys' fees and other litigation expenses from Glatt pursuant to a provision of the

contract between the companies that entitled a prevailing party to "reasonable legal and other professional fees and expenses." The judge awarded Tate $785,422.50, and its insurer $213,313.50, in attorneys' fees. He awarded an additional sum in professional fees and expenses of $356,075.96, but didn't indicate how he was splitting the amount between Tate and its insurer.

Pointing to a provision in the contract that forbids the award of "special damages," Glatt argues that attorneys' fees, along with other professional fees and expenses, are "special damages"—but obviously not in *this* contract, as it would wipe out the provision awarding such fees and expenses to the prevailing parties, Tate and the insurer.

At the trial Tate argued that the fire had been caused by an electrostatic spark from a defective filter. Glatt argued that the cause of the fire had been unrelated to the filters—rather that the powder in the granulator had "self-heated" by undergoing a heat-releasing chemical reaction that had raised the temperature of the product to a height at which it caught fire.

Glatt argues that the judge should not have allowed Tate to argue to the jury that any of the filters in the granulator were defective, because before the trial Tate had in response to a request for admissions by Glatt admitted not being "presently aware of anyone that observed cracked, chipped, or poorly fitting filters in the Granulator following work performed by Dynacoil [a Glatt contractor, shortly before the fire]," and Tate also admitted not having discovered "any evidence that one or more of the Granulator filters or filter housings [was] cracked, chipped or poorly fitting at the time the September 17, 2009 fire started."

Federal Rule of Civil Procedure 36(b) states that "a matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." In other words, while "a judicial admission is conclusive, unless the court allows it to be withdrawn," *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995), the district judge in this case did that, albeit informally, when he allowed Tate, over Glatt's objection, to argue and present testimony that there had indeed been defective filters in the granulator before the fire occurred. Had Tate's evidence contradicted its admission, then the district court would have erred, because Tate never moved to withdraw or amend the admission in question. But there was no contradiction.

Glatt exaggerates the scope of Tate's admissions. They were not unqualified—Tate had explained that although it had no "direct evidence that one or more of the Granulator filters or filter housings was cracked or chipped at the time the fire started," as the filters that were in the Granulator at the time of the fire had been destroyed by the fire, it had indirect evidence suggesting that one or more than one filter may have been cracked at the time of the fire. Read as a whole, far from admitting that there was no possibility that any evidence of defective filters predated the fire, Tate merely denied having any direct evidence, instead asserting that "following the fire, additional work needed to be done to the filter housing because filters were poorly fitting which would suggest the filter housing and filters [had] remained

poorly fitting even at the time of the fire." And two months after Tate had submitted its very limited admissions, it supplemented them by presenting evidence that no fewer than 16 filters installed in the Granulator before the fire had been damaged. Tate should have invoked Rule 36(b), but as its failure to do so was harmless when all the evidence is considered, to order a new trial on the basis of a technical error would be to arrogate form over substance, wasting everybody's time to no purpose.

Glatt's brief recites a laundry list of additional alleged errors in the proceedings below, relating to the admission of evidence, its request for additional discovery, and other matters. But its arguments are close to being cursory, and the issues they raise were resolved soundly by the trial judge.

Because we find that neither the magistrate judge nor the jury committed a reversible error, the judgment of the district court is

AFFIRMED.

HAMILTON, *Circuit Judge*, dissenting. I agree with the majority's resolution of all but one of the many issues raised in this appeal. The one exception is the judge's decision to allow plaintiffs to present evidence contrary to their Rule 36 admissions. The judge abused his discretion by applying the wrong legal standard to resolve this pivotal issue incorrectly. What the majority downplays as a "technical error" allowed plaintiffs to ambush Glatt at trial on a critical issue. I would reverse and remand for a new trial on that basis.

Plaintiffs offered two theories to hold defendant Glatt liable for the fire. One was that one or more plastic filters in the granulator were cracked, and that cracks allowed metal inside the filter to contact other metal parts so as to cause a spark that started the fire. Defendant Glatt served requests for admissions under Federal Rule of Civil Procedure 36. Three asked plaintiffs to admit in essence that they had no evidence that filters were cracked at the time of the fire.

Plaintiffs' responses were convoluted, but the bottom line was that plaintiffs admitted they had not discovered any evidence that one or more of the filters or filter housings was cracked at the time of the fire. Cf. *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003) (district court erred by failing to give preclusive effect to plaintiff's Rule 36 admission that he had no evidence that defendant withheld exculpatory evidence; admission was fatal to plaintiff's claim).

At trial, however, the judge allowed plaintiffs to contradict their admissions on this critical issue. The majority errs by claiming "there was no contradiction" because the admissions were "not unqualified." Ante at 4. Read as a whole, the majority argues, Tate & Lyle indicated in its admissions that it had indirect evidence of cracked filters at the time of the fire.

The admissions should be read as a whole, and to that end I have reproduced them in full as an appendix.[1]

Glatt's requests for admissions tried to learn in three different ways whether plaintiffs had any evidence that cracked filters were in the granulator at the time of the September 17, 2009 fire. The first two requests (Nos. 7 and 8) focused on whether plaintiffs had "observe[d]" or were "informed" about cracked filters after Dynacoil's filter repairs in August 2009. Although plaintiffs "denied" those requests, they went on to say: "it is admitted T&L is not presently aware of anyone that observed cracked, chipped, or poorly fitting filters in the Granulator following work performed by Dynacoil in August or September of 2009."

Despite this admission, plaintiffs' expert witness testified at trial that he had "been told that there were some 16 of these damaged or cracked filters, in fact, in the machine before the fire." SA 61. The district court excused the jury and acknowledged that although the expert had said the broken filters were in the granulator "before the fire, it certainly came across as at the time of the fire so that's why I excused the jury to make sure that this didn't become worse than it needs to be." SA 66–67. Outside the presence of the jury, plaintiffs' counsel *admitted that he had told the expert that 16 broken filters were inside the granulator on September 1st*. SA 65. The expert also said:

---

[1] While parts of the responses were convoluted and as the majority says "not unqualified," the qualifications were not relevant to the way in which plaintiffs' contradicted their admissions. The "qualifications" in the admissions speculated that the "new" filters installed after the August 2009 repairs could have experienced stress and cracked. Plaintiffs offered evidence at trial, however, that *the old cracked filters* were reinstalled in the granulator after the repairs.

"What I have been told is this, that on September 1st, if I remember that date correctly, I may be off a day or two, that they had put in there those broken filters. And from September 1st to the 17th, and for a good number of days in fact, the machine had not been in operation." SA 69–70.

Making matters worse, one of plaintiffs' employees volunteered in cross-examination that he reinserted cracked filters into the granulator after the repairs:

Q: Okay. Well, isn't it true that you had a conversation with Mr. Wenrich sometime before the fire where Mr. Wenrich had asked you about the filter issue, and you had told him that you weren't aware of any filters that have been damaged since the repair was done three weeks ago?

A: Yes, so that, that does say that. *But we had cracked filters that we had been using to fill the granulator*. [Note that this was volunteered and non-responsive.]

Q: Well, you had a whole—*this is the first time I'm hearing this so*—you had a full stock of filters in your possession, did you not?

A: Yep.

Q: So, you didn't use those stock filters to replace the cracked ones then?

A: We used some of them, but we continued using some of the cracked ones also because I didn't want to keep cracking more filters.

Dkt. No. 299 at 140–41 (emphases added). This testimony directly contradicted Admissions 7 and 8.

Glatt's third request (No. 9) was even broader than the first two. It sought admission that plaintiffs "have not discovered *any* evidence that one or more of the Granulator filters" was cracked at the time of the fire on September 17, 2009. (Emphasis added.) Tate & Lyle's first sentence in response said: "It admits the allegations in Paragraph 9 as it pertains to cracked or chipped filters or housing." It continued by noting that it had "not discovered direct evidence" of cracked filters, but it speculated that "it was possible" some filter elements were under stress after the repairs and could have broken again.

Again, this admission was directly contradicted by plaintiffs' witness at trial:

Q: Okay. My question, though, is on September 17th of 2009 and after Dynacoil had gone and done this retrofit program and had modified these filter housings, my understanding is that there is no evidence whatsoever that there was any cracked filters inside the granulator; isn't that true?

A: No. That is not true.

Q: So, you know there were cracked filters inside the granulator afterwards?

A: Yeah, while we were running, yes.

Q: Okay. So, you're saying that on September 17th of 2009, there were cracked filters inside the granulator?

A: Yes.

Dkt. No. 299 at 137.

Despite these contradictions, plaintiffs never moved under Rule 36(b) to withdraw or amend their admissions. When Glatt objected based on plaintiffs' Rule 36 admissions, the

judge told Glatt it should simply "argue the weight of the evidence." The judge explained that in allowing plaintiffs to offer the evidence contradicting their Rule 36 admissions, he was relying on *David v. Caterpillar, Inc.*, 324 F.3d 851, 856–57 (7th Cir. 2003).

That was an abuse of discretion because the judge applied the wrong law, the wrong legal standard. See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990); *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 976 (7th Cir. 2011). The *David* case dealt with parties' more general duty to supplement discovery responses under Rule 26(e) and sanctions under Rule 37. By relying on *David* and handling this issue as he did, the judge failed to appreciate: (1) the effect of a Rule 36 admission; (2) the procedure for withdrawing such an admission; and (3) the different standard that applies under Rule 36(b). See 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2264 at 400 (3d ed. 2010) ("To the extent that there is an inconsistency, the specific provision of Rule 36(b) should control over the general provision of Rule 26(e)"; withdrawal or amendment of Rule 36 admission must satisfy requirements of Rule 36(b)).

First, the judge overlooked the most important difference between other discovery responses and Rule 36 admissions: admitted matters are not merely evidence but are "conclusively established." Rule 36(b); *Banos v. City of Chicago*, 398 F.3d 889, 892 (7th Cir. 2005) (affirming denial of leave to withdraw admissions). Advisory committee notes show that clarifying just this point was a chief purpose of the 1970 amendments to Rule 36(b).

Second, if a party wants to withdraw or amend a Rule 36 admission, Rule 36(b) expressly requires a "motion." No motion was filed here. See *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (affirming decision based on admissions where responding party never filed a motion to withdraw); *American Automobile Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991) (reversing admission of evidence contradicting Rule 36 admission without motion to withdraw or amend admissions); *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985) (affirming refusal to allow evidence at trial to contradict Rule 36 admission). And as the *AAA* and *999* courts made clear, trial is ordinarily far too late even for a formal motion to withdraw or amend.

Third, even if we overlook the lack of a motion, the substantive standard for withdrawal or amendment under Rule 36(b) is much more demanding than the *David* standard the trial judge applied here. Rule 36(b) provides:

> Subject to Rule 16(e) [endorsing importance of final pretrial order that may be modified only to prevent "manifest injustice"], the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Admissions are not merely evidence to weigh. They are judicial admissions. They cannot be contradicted by the responding party without the court's permission to withdraw or amend them. E.g., *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Unless the party securing an admission can depend on its binding effect, he [or she] cannot safely

avoid the expense of preparing to prove the very matters on which he [or she] has secured the admission, and the purpose of the rule is defeated."), quoting 1970 Fed. R. Civ. P. 36 advisory committee note; *Airco Industrial Gases, Inc. v. Teamsters*, 850 F.2d 1028, 1037 (3d Cir. 1988) (reversing district court's failure to give Rule 36 admission binding effect; "This admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."); *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987) (reversing district court's refusal to recognize Rule 36 admission); *Brook Village North Associates v. General Electric Co.*, 686 F.2d 66 (1st Cir. 1982) (reversing district judge's decision to permit evidence contradicting Rule 36 admissions); see generally 8B Wright & Miller, *Federal Practice and Procedure* § 2264 (3d ed. 2010).

Under the correct Rule 36(b) standard, allowing withdrawal or amendment in this case would have been an abuse of discretion. Defendant Glatt had been relying on the Rule 36 admissions for two years. Plaintiffs waited until at least the eve of trial to try to avoid their admissions (though without filing a Rule 36(b) motion admitting what they were doing). The correct standard here should have required a showing of "manifest injustice" consistent with Rule 16(e). That certainly was not shown in light of plaintiffs' gamesmanship regarding the admissions.

In a mistaken effort to minimize the prejudice to Glatt, the majority writes: "And two months after Tate had submitted its very limited admissions, it supplemented them by presenting evidence that no fewer than 16 filters installed in the Granu-

lator before the fire had been damaged." Ante at 5. The majority is referring to plaintiffs' mere production of one email as part of a much larger document production, without comment or explanation. That is not a fair basis for excusing plaintiffs' or the court's error. Merely producing an unexplained document does not signal to the requesting party that the admitting party intends to withdraw or amend its admissions. That's why Rule 36(b) requires a motion, to give fair notice of an intent to change positions from the formal admission.

No trial is perfect, and I do not vote lightly to retry a case like this. But this was not a minor technical error. Glatt was entitled to rely on the Rule 36 admissions. It was prejudiced at trial by the trial court's use of the wrong legal standard to nullify those admissions at trial. By treating the trial court's error in this case as a "technical error," the majority fails to grasp the unfair advantage that plaintiffs gained by these tactics. By tolerating these tactics, the majority opinion will muddy the waters unnecessarily in this branch of federal civil practice. And by undermining justified reliance on Rule 36 admissions, the majority opinion is also likely to reduce the benefits of using Rule 36, which will tend to raise the costs of civil litigation. For these reasons, I hope trial judges in this circuit and beyond will respond to this odd outlier of a decision by resisting any temptation to follow the shortcuts tolerated in this case and by turning square corners in applying Rule 36(b). I respectfully dissent.

APPENDIX

*Plaintiff Tate & Lyle Americas LLC Response to Defendant Glatt Air Techniques Inc.'s Request to Admit. Separate Appendix for Defendant-Appellant at 128–29.*

7. After the August 2009 filter repairs to the Granulator were completed to the time of the September 17, 2009 tire, you did not observe any cracked, chipped, or poorly fitting filters in the Granulator.

RESPONSE: It denies the allegations in Paragraph 7. T&L is not aware of any filter repairs performed. If this Request was intended to ask about complaints after the granulator filter housing repair efforts were made, it is admitted T&L is not presently aware of anyone that observed cracked, chipped, or poorly fitting filters in the Granulator following work performed by Dynacoil in August or September of 2009. Answering further, Reinard Ortloff advised David O'Connor, William Wenrich, Paul Buser, Steve Sirabian, Ulrich Walter, on July 30, 2009, that it was possible some filter elements had stress on the support in the GFG and if that was the case there was a high risk that new filter elements would break again. If this Request was intended to ask about observations of cracked, chipped or poorly fitting filters, after the granulator filter housing repair efforts were made, it is admitted it is not currently aware of any such observations.

8. After the August 2009 filter repairs to the Granulator were completed to the time of the September 17, 2009 fire, no one informed you that one or more of the Granulator filters o[r] filter housings were cracked, chipped, or poorly fitting.

RESPONSE: It denies the allegations in Paragraph 8. T&L is not aware of any filter repairs performed. T&L is not presently aware of anyone that observed cracked, chipped, or poorly fitting filters in the Granulator following work performed by Dynacoil in August or September of 2009. Answering further, Reinard Ortloff advised David O'Connor, William Wenrich, Paul Buser, Steve Sirabian, Ulrich Walter, on July 30, 2009, that it was possible some filter elements had stress on the support in the GFG and if that was the case there was a high risk that new filter elements would break again. The filters provided with the Granulator, even if not cracked, chipped or poorly fitting, had exposed metal in the frame. If this Request was intended to ask about information given of cracked, chipped or poorly fitting filters, after the granulator filter housing repair efforts were made, it is admitted it is not currently aware of any such information given.

9. You have not discovered any evidence that one or more of the Granulator filters or filter housings [w]as cracked, chipped or poorly fitting at the time the September 17, 2009 fire started.

RESPONSE: It admits the allegations in Paragraph 9 as it pertains to cracked or chipped filters or housing. T&L has not discovered direct evidence that one or more of the Granulator filters or filter housings was cracked or chipped at the time the fire started. For further answer, Reinard Ortloff advised David O'Connor, William Wenrich, Paul Buser, Steve Sirabian, Ulrich Walter, on July 30, 2009, that it was possible some filter elements had stress on the support in the GFG and if that

was the case there was a high risk that new filter elements would break again. Answering further, and denying the allegations as it relates to poorly fitting filters and filter housing, following the fire, additional work needed to be done to the filter housing because filters were poorly fitting which would suggest the filter housing and filters remained poorly fitting even at the time of the fire.