Ernest T. BROWN, et al., Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 95 C 1890.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 16, 1998.

Craig Benson Futterman, Futterman & Howard, Chtd., Chicago, IL, Lesley A. Redman, Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiffs.

James D. Holzhauer, Jeffrey Scott Piell, Angela K. Dorn, Mayer, Brown & Platt, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, J.

On June 30, 1998, after trial on the issue of liability prosecuted by 44 minority sergeants who took the 1994 Chicago police lieutenant promotion examination (which the parties agree had an adverse impact on minorities), this court ruled that that examination was content valid, but that defendant City of Chicago violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, by failing to utilize an equally available, less discriminatory method under which 20% of lieutenant promotions would be based on merit rather than rank order test scores. *See Brown v. City of Chicago*, 8 F.Supp.2d 1095 (N.D.Ill. 1998). In determining the appropriate remedy consistent with this holding, the court has had to confront the difficulties created by the fact that this case was not brought as a class action, and that only one of the named plaintiffs was among the 13 sergeants selected by merit from the group who took the 1994 examination.

The parties have taken extreme positions on this issue. Plaintiffs' counsel has argued that the court should, in effect, fashion a remedy as if a class of all minority candidates had been certified (a position the court has previously rejected) and, further, that the court should award relief to all named plaintiffs regardless of whether they had been or were likely to have been chosen for merit promotions. The City has argued that only the single named plaintiff who had been among the 13 sergeants chosen for merit selection from the 1994 list, Sergeant Roberta Raymond, should be awarded anything.[1] In addition, Peter Dignan, Joseph Antonio, Thomas Keane, James Carroll, and Donald Kuchar (the "Dignan Intervenors"), non-minority sergeants who had been among the 13 chosen from the 1994 list, have petitioned the court to intervene as plaintiffs.

■ Although only Sergeant Raymond is a named plaintiff in this case, Title VII clearly allows the court discretion to order broader equitable and affirmative relief than that advocated by the City. 42 U.S.C. § 2000e–5(g) provides:

> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.

"Intentional" conduct in this context, means that "the practice was followed deliberately, not accidentally." *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1230 (10th Cir.1997). As discussed in the court's previous opinion, the City's decision to not utilize the merit selection plan that both the City and plaintiffs agree was an equally available, less discriminatory method of promotion, was intentional. Accordingly, this court has the discretion to award relief to employees other than the named plaintiffs. The issue presently before the court is how best to exercise that discretion.

■ The court agrees with plaintiffs that it should be guided by the principle that the purpose of Title VII is "to make the victims of unlawful discrimination whole by restoring them so far as possible ... to a position where they would have been were it not for the unlawful discrimination," *Ford Motor Co. v. EEOC*, 458 U.S. 219, 230, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), and that in doing so the court should attempt "to recreate the

---

1. The City also acknowledges that the remaining 43 plaintiffs "may be entitled to some compensation" for the lost opportunity to be considered for merit selection in the second round of lieutenant promotions from the 1994 list, which occurred in March 1996. At that time, as in 1995, 54 sergeants were promoted, and 13 additional sergeants would have been promoted by merit. The mathematical likelihood of receiving a merit promotion in 1996 would therefore have been 13/794 (1.64%). The 794 figure is computed by deducting the 108 sergeants promoted by exam scores and the 13 original merit promotees from the 915 sergeants who took at least one component of the 1994 exam.

conditions and relationships that would have existed if the unlawful discrimination had not occurred." *United States v. City of Chicago,* 853 F.2d 572, 575 (7th Cir.1988).

■ It is clear to this court that the failure by the City to utilize the merit selection plan in place for the 1994 examination directly injured the 13 sergeants, minority and non-minority, who were actually chosen for promotion from that list but not promoted in 1995 as a result of the City's intentional conduct. The City complains that such promotion of the 13 sergeants at this time (and indeed any promotions from the 1994 list at this time) would be disruptive to its current program of promoting 30% of lieutenants by merit selection, and further, that some of the sergeants who were among the original 13 are no longer eligible.[2]

While the court respects the City's efforts to maintain morale and to run an orderly promotional process, those considerations do not outweigh the remedy that this court considers necessary to correct the intentional conduct that it has found violated Title VII with respect to the original 13 sergeants who had been chosen for merit promotion. The court notes that these sergeants had completed training as lieutenants and were scheduled to be promoted when the *McArdle* injunction was issued. (For details involving this episode, *see Brown,* 8 F.Supp.2d 1095, 1110–12.) They should now be made whole.[3]

Accordingly, the petition of the Dignan Intervenors to intervene is granted, and the court hereby orders the City to promote with all deliberate speed the 13 sergeants chosen for merit promotion in 1995 to the rank of lieutenant, and to award them back pay consisting of the differential between their sergeant's pay and their lieutenant's pay, dating back to April 1995 when they had been scheduled to be promoted.

With respect to additional promotions beyond the 13, however, the court finds the City's arguments persuasive. Significantly, the criteria and procedures put into place for merit promotions from the 1994 list were abbreviated and, as the parties agree, inferior to the current merit selection procedures by which the City intends to promote 30% (not 20%) of lieutenants by merit selection. There simply is no way for this court or the City to "recreate the conditions and relationships that would have existed if the unlawful discrimination had not occurred" in 1994 and 1995. *United States v. City of Chicago,* supra., 853 F.2d at 575. The City has persuaded this court that it would be impossible and disruptive to "clone" sergeants who took the 1994 examination into the group who took the 1998 examination and are thus eligible for merit promotion at this time. Other than the 13 sergeants who had been chosen for the 1994 list, no other candidates were identified for merit promotion. To attempt now to identify sergeants who were deserving of merit promotion three years ago would be conjectural and overly subjective.

To order further merit promotions from the 1994 list would therefore require an artificial exercise under hypothetical conditions that would not significantly alter the racial composition of the corps of Chicago police lieutenants. Judging from the evidence presented at trial and thereafter, the court is convinced that the City is doing all it can (with the exception of the disputed issues herein) to promote racial and ethnic diversity among the ranks of its lieutenants.

Accordingly, in balancing the equities and fashioning a remedy for the discrimination held by this court to have resulted from the City's decision not to use merit promotion in connection with the 1994 examination, the court declines to award further relief than that which is discussed above with respect to the 13 sergeants.

2. Specifically, the City claims that one of the 12 remaining candidates is the subject of termination proceedings based on the Chicago Police Department's determination that that sergeant fraudulently altered police department weapons records.

3. Presumably, the disciplinary proceedings can continue against the individual charged with

concealment of records, regardless of whether such person is a sergeant or a lieutenant. If, in the City's view, any other of the original 13 merit candidates are currently ineligible for promotion to lieutenant (e.g. through retirement, death or disability), the City should so notify the court forthwith.

The City is directed to prepare and file a list of the 13 sergeants to be promoted as stated above, along with calculations of back pay for each of them, on or before September 25, 1998. At the hearing scheduled for October 1, 1998, the parties will be expected to address the issue discussed in footnote 1 above.