09-4318-cv
Hamilton v. City of New York

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: September 28, 2010                    Decided: December 3, 2010)

Docket No. 09-4318-cv

_____

ESTATE OF PAULETTE HAMILTON, SUBHASH NAIK, GAMAL HANNA, and NIVINE ELSHAROUNY,

*Plaintiffs-Appellants,*

v.

THE CITY OF NEW YORK and SCOTT O'NEILL,

*Defendants-Appellees.*

_____

Before: JACOBS, *Chief Judge*, WALKER and CABRANES, *Circuit Judges*.

Appeal from a September 21, 2009 judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) granting summary judgment to defendants on federal and state law claims relating to alleged instances of employment discrimination.

We affirm the judgment of the District Court in all respects, save for its dismissal of plaintiffs' claims under New York Labor Law § 190 *et seq*. We conclude that the City of New York's defense that it is not covered by the relevant provisions of the New York Labor Law must be affirmatively pleaded pursuant to Rule 8(c). Therefore, we vacate the District Court's dismissal of plaintiffs' New York Labor Law claims, and remand for consideration of whether it would be appropriate to construe defendants' motion for summary judgment as a motion to amend the answer to assert an affirmative defense for the first time.

1

BARRY D. HABERMAN, New City, NY, *for Plaintiffs-Appellants.*

RONALD E. STERNBERG, (Michael A. Cardozo, Corporation Counsel of the City of New York, and Leonard Koerner and Christopher A. Seacord, *of counsel*), New York, NY, *for Defendants-Appellees.*

PER CURIAM:

Plaintiffs-appellants Gamal Hanna, Nivine Elsharouny, Subhash Naik, and the Estate of Paulette Hamilton[1] appeal from a judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*), dismissing, with prejudice, their complaint against defendants-appellees Scott O'Neill and the City of New York. Plaintiffs brought suit for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; under 42 U.S.C. § 1983 ("§ 1983"); under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and under the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* Additionally, plaintiffs advanced claims that they (1) suffered retaliation for filing discrimination claims, (2) were deprived of due process of law in violation of § 1983, and (3) were denied wages that were owed to them in violation of New York Labor Law § 190 *et seq.* ("Labor Law" claims).

The District Court held that plaintiffs had abandoned their due process and retaliation claims. Furthermore, the Court granted summary judgment to defendants on the state and federal discrimination claims as well as the Labor Law claims. On appeal, plaintiffs challenge all of these rulings, excepting the retaliation claim, as well as certain evidentiary decisions made by the court below. We affirm the District Court in all respects save for its dismissal of plaintiffs' Labor Law claims; we remand for consideration of whether it would be appropriate to construe defendants' motion for

---

[1] Hamilton died on February 1, 2007. Her estate was substituted as a plaintiff by the District Court.

2

summary judgment as a motion to amend the answer to assert an affirmative defense for the first time.

## BACKGROUND

Plaintiffs are current or former employees of the Controlled Substance Analysis Section of the New York City Police Department Crime Laboratory ("crime lab"). All four were born abroad: Hanna and Elsharouny in Egypt, Naik in India, and Hamilton in Jamaica. Almost all employees in the crime lab are "Criminalists," ranging in assignment levels from I-IV. Generally, all supervisory duties are supposed to be performed by Criminalists IV.

Despite being only Criminalists III, plaintiffs all were given supervisory responsibilities for a substantial period of time. Although these increased responsibilities were not accompanied by improved salary, benefits, or formal title, plaintiffs were referred to as Criminalists III-Supervisor within the crime lab.

In 2005, two new Criminalist IV positions were created within the Controlled Substance section. Defendant O'Neill, who was the immediate supervisor of that section, was tasked with filling these vacancies. In accordance with the custom and practice of the crime lab, no general announcement was made to advertise these vacancies and O'Neill did not conduct any interviews. In his affidavit, O'Neill claimed that his top choice for the job was Vito Casella—an Italian-born Criminalist III-Supervisor—but that Casella had turned him down. Instead, O'Neill hired Matthew Johnson and Thomas Hickey, the only two white, American-born males of the seven individuals then holding the (informal, but apparently well established) designation of Criminalist III-Supervisor, despite the fact that all four plaintiffs had considerably longer tenures as employees of the crime lab.

Following the ascension of Johnson and Hickey, there remained only five people holding the position of Criminalist III-Supervisor in the crime lab—the four plaintiffs and Casella. With Johnson and Hickey now filling formal supervisory roles, O'Neill concluded that it was appropriate and feasible

to eliminate the position of Criminalist III-Supervisor altogether so that all supervisory functions would be performed by Criminalists IV only, as had been originally intended. Plaintiffs were informed that they were being relieved of their supervisory functions, but their salary, benefits, and formal title remained unchanged.

Shortly after these events, plaintiffs filed a complaint with the New York Police Department's Office of Equal Employment Opportunity ("OEEO") claiming that they had been denied promotions on the basis of their national origin. This claim was investigated and ultimately determined to be without merit due to the fact that Johnson and Hickey were found to have had generally better performance evaluations than each of the plaintiffs. In 2006, plaintiffs filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] Contrary to the OEEO, the EEOC found at least that there was reason to believe a violation had occurred.

Plaintiffs filed a complaint in New York state court in August 2006. The case was removed to federal court, and plaintiffs twice amended their complaint, most recently in October 2007. While this case was before the District Court, another Criminalist IV position became available in the Controlled Substances section of the crime lab. By this time, O'Neill, who had since been promoted to be Deputy Director of the crime lab, had decided to advertise vacancies internally and conduct formal interviews of all applicants. Plaintiffs Hanna, Elsharouny, and Naik all applied for this position, but none of them scored well enough during the initial interview to advance to the second round of interviews. Thereafter, a white, American-born male was selected for this promotion, as well.

Defendants moved for summary judgment on all claims in November 2008, and the District Court dismissed plaintiffs' complaint on that basis in September 2009. This appeal followed.

---

[2] Plaintiffs now claimed that they had been discriminated against on the basis of their race and national origin. Hamilton and Elsharouny claimed that they were discriminated against on the basis of sex as well.

4

**DISCUSSION**

*A. Evidentiary issues*

Before considering the merits of plaintiffs' claims, we must first consider what evidence was properly before the District Court at the summary judgment stage. *Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that, in determining the appropriateness of a grant of summary judgment, [this court], like the district court in awarding summary judgment, may rely only on admissible evidence." (quotation marks omitted)). Here, plaintiffs argue that the District Court erroneously excluded various items of evidence. Each of these challenges is without merit.

First, we hold that the District Court correctly excluded plaintiffs' proffer of O'Neill's statement that, following the challenged promotions, "managerial staff determined that involving more individuals in the promotion process might help prevent unsuccessful candidates from feeling as if they were unfairly passed over for promotion." Such a statement plainly runs afoul of Rule 407 of the Federal Rules of Evidence, which generally prohibits a plaintiff from introducing evidence of subsequent remedial measures taken by the defendant in order to establish the defendant's underlying liability. *See Lust v. Sealy, Inc.*, 383 F.3d 580, 585 (7th Cir. 2004) (observing that there is no reason to limit application of this rule to nonintentional torts).[3]

Next, plaintiffs complain that they should have been permitted to introduce a statement given to the OEEO by Peter Pizzola, O'Neill's boss, in which Pizzola asserted that O'Neill had told him Casella was not "supervisory material." This hearsay statement was rightly excluded from evidence as it

---

[3] We note that our analysis might have been different in a disparate-impact claim under Title VII. In that situation, a plaintiff may be required to establish that there was an equally valid and less discriminatory method of evaluation that the defendant-employer refused to use. *See* 42 U.S.C. § 2000e-2(k)(1)(A). Because Rule 407 explicitly permits evidence of subsequent remedial measures to be admitted to prove the feasibility of precautionary practices, O'Neill's challenged statement might have been admissible in a disparate-impact context. *See Adams v. City of Chicago*, 469 F.3d 609, 612 (7th Cir. 2006).

is not subject to any of the hearsay exceptions cited by plaintiffs.[4]

Plaintiffs also challenge the District Court's refusal to consider the EEOC's determinations that all four plaintiffs had been discriminated against based on national origin. The case law of our circuit is clear that the decision to consider EEOC findings is left to the "sound discretion" of the district court. *Paolitto v. Brown E.&C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998). In its opinion, the District Court carefully explained its decision to exclude the EEOC's determinations on the grounds that these findings (a) were conclusory, and (b) failed to address the defendants' strongest evidence regarding plaintiffs' inferior performance evaluations. Defendants are unable to demonstrate any error on the part of the District Court, much less an "abuse of discretion." *See generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks omitted)).

Finally, in separate affidavits, three of the plaintiffs allege that O'Neill told them that he wanted to "change the face" of the Criminalist III-Supervisor position. The District Court declined to consider this evidence because, in their prior deposition testimony, all three plaintiffs answered in the negative when asked if O'Neill, or any other employee of the New York Police Department, had ever made any comments to them that could be interpreted as discriminatory. Given this direct contradiction, the District Court was right not to give weight to the later affidavits. *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary

---

[4] In their reply brief, plaintiffs for the first time argue that Pizzola's statement is not hearsay at all since it was made concerning a matter within the scope of Pizzola's employment. *See* Fed. R. Evid. 801(d)(2)(D). Because this argument was not advanced before the District Court or in plaintiffs' opening brief, we consider it forfeited. *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 141 (2d Cir. 1999).

judgment.").

*B. Discrimination claims*

We turn now to the discrimination claims at the heart of plaintiffs' case and appeal. The District Court granted summary judgment to defendants on plaintiffs' claims that they had been discriminated against in violation of Title VII and § 1983; as well as in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* "We review a district court's grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving party." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

"Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000). Plaintiffs assert that they were discriminated against in two distinct ways: first, they were passed over for promotion to the Criminalist IV positions; second, they were "demoted" to Criminalist III after having held the title of Criminalist III-Supervisor. We consider the failure to promote and demotion claims in turn.

*(1) Failure to promote*

In order to establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff ordinarily must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (quotation marks omitted). For sake of the argument,

we assume, as did the District Court, that plaintiffs made a prima facie showing of discrimination on the basis of race, national origin, and sex.

Under the familiar burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas*, after a prima facie instance of discrimination has been identified, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Defendants point to numerous, legitimate factors supporting their promotion decisions. Regarding the two promotions made in 2005, defendants note that the candidates who were promoted to Criminalist IV positions had uniformly better performance evaluations than the plaintiffs. In addition, O'Neill's first choice for promotion was Vito Casella, who was born in Italy, thus casting significant doubt on plaintiffs' implicit claims that O'Neill was prejudiced against foreign-born individuals.[5]

As for the subsequent promotion made in 2007,[6] defendants state that the plaintiffs did not fare well during the relevant interviews. Defendants also point out that O'Neill himself was born outside the United States (he was born in Scotland), and furthermore, prior to 2005, all seven Criminalists IV working in the Controlled Substances section had been born outside of the United States.

Because the defendants have proffered a valid reason for their promotion determinations, "the question in adjudicating the defendants' motion for summary judgment becomes simply whether the evidence in plaintiff[s'] favor, when viewed in the light most favorable to the plaintiff[s], is sufficient to sustain a reasonable finding that [the adverse employment decision] was motivated at least in part

---

[5] Plaintiffs vigorously contest this point on the basis of Pizzola's inadmissible hearsay testimony about O'Neill's comment to him that Casella was not "supervisory material." Inasmuch as this statement was deemed inadmissible and that Pizzola later testified during his deposition that he had "misspoken," the District Court properly accepted as true O'Neill's statement that Casella was his first choice for promotion. Indeed, Casella himself acknowledged that O'Neill had offered him the promotion.

[6] Plaintiff Naik was an unsuccessful applicant for two other promotions in other sections of the crime lab. There too, defendants claim that he was passed over on the basis of his poor performance in the first-round interview.

by . . . discrimination." *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 114 (2d Cir. 2007). Plaintiffs are simply unable to meet this burden. For example, they focus on the supposed dispute over whether Casella was really offered a Criminalist IV position. But even assuming (which we do not, *see* note 5, *ante*) that Casella was not O'Neill's first choice, defendants' basic argument—that plaintiffs were not as qualified as those selected for promotion—remains unchallenged.[7] Plaintiffs point to no evidence indicating that the relevant performance evaluations were biased or manifestly inaccurate. Accordingly, we agree with the District Court that plaintiffs' discrimination claims based on their failure to receive promotions cannot survive summary judgment.

*(2) Demotion*

Plaintiffs also argue that they were improperly discriminated against when they were allegedly demoted in 2005. Specifically, following the promotion of Hickey and Johnson, the remaining five Criminalist III-Supervisors—the four plaintiffs and Casella—were relieved of their supervisory responsibilities. We again assume, for purposes of our *McDonnell Douglas* analysis, that this represents a prima facie case of discrimination.

O'Neill justified these "demotions" by observing that after Hickey and Johnson had been promoted to Criminalist IV, the crime lab no longer needed Criminalist IIIs to perform supervisory duties—a supervisory arrangement that O'Neill deemed to be "inappropriate." Defendants also note that Casella had his supervisory duties revoked as well, and he had been O'Neill's first choice for promotion—in other words, the plaintiffs were not specifically targeted.

Once again, plaintiffs have failed to identify sufficient evidence in the record to sustain a

---

[7] Plaintiffs also argue that they had more experience than the candidates promoted ahead of them. Experience, however, is not a substitute for performance, and defendants had every right to place greater emphasis on the performance evaluations of the candidates for promotion. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("'Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.'" (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999))).

reasonable finding that this adverse employment action was motivated, at least in part, by improper discrimination. The plaintiffs make the indisputable point that, following the demotions, there were fewer supervisors in the crime lab, but they put forward no evidence suggesting that additional supervisors were needed after Hickey and Johnson assumed their positions as Criminalists IV. Plaintiffs also argue that the secrecy surrounding the decision to eliminate the Criminalist III-Supervisor position is indicative of defendants' discriminatory intent. Such a claim, without more, is far too speculative to allow plaintiffs to survive summary judgment.[8]

*C. Labor Law claims*

Plaintiffs argue that the District Court improperly granted defendants summary judgment on plaintiffs' claim that they were not properly compensated for the work that they had performed on behalf of the City. *See* N.Y. Labor Law § 190 *et seq.* The District Court ruled for defendants because New York Labor Law § 190(3) provides that "[t]he term 'employer' shall not include a governmental agency," and the New York Police Department clearly is a governmental agency. Plaintiffs do not contest this point; rather, they maintain that this defense was unavailable to defendants because it was not affirmatively pleaded under Rule 8(c) of the Federal Rules of Civil Procedure.

Rule 8(c) identifies nineteen separate affirmative defenses, but this list is not exhaustive, and courts have struggled with identifying precisely what else constitutes an "avoidance or affirmative defense." *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed. 2004). Under our circuit precedent, when a defendant seeks to raise a point about something that "is not an element which the plaintiff must establish to make out a prima facie showing of liability," he must plead it as an affirmative defense. *See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust*

---

[8] Having affirmed the District Court's dismissal of plaintiffs' discrimination claims, we must also affirm the dismissal of plaintiffs' derivative § 1983 claims against O'Neill and the City of New York.

10

*Co.*, 889 F.2d 1248, 1253 (2d Cir. 1989). In New York, "[i]t is a well-settled rule . . . that a party has a right to sue on any cause of action which he holds, and any statutory exception to that right must be distinctly expressed." *Saxe v. Peck*, 124 N.Y.S. 14, 15 (App. Div. 3d Dep't 1910). The question then is whether the language in § 190(3) constitutes a "statutory exception": plaintiffs maintain that it does, while defendants insist that the statute itself is inapplicable to all government entities. We think that plaintiffs have the better of this argument. Although not formally styled as an "exception," § 190(3) undoubtedly functions as one by carving out governmental agencies from the reach of the statute. While a plaintiff making a Labor Law claim surely has the burden to demonstrate that the defendant is an "employer," we are not convinced that the plaintiff must also, in all cases, affirmatively allege that the defendant in question is *not* a "governmental agency."

Our holding is consistent with federal case law interpreting similar provisions in Title VII and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* For instance, Title VII states:

> The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f). Personal staff of a public officer are expressly excluded from Title VII's definition of "employee," yet the Fifth Circuit has held that this "exception" must be affirmatively pleaded under Rule 8(c). *See Oden v. Oktibbeha County*, 246 F.3d 458, 466-67 (5th Cir. 2001). Courts have reached identical conclusions in cases involving similar "exemptions" included in the FLSA. *See, e.g., Brennan v. Valley Towing Co.*, 515 F.2d 100, 104 (9th Cir. 1975). Accordingly, we hold that the defense that § 190(3) shields defendants from liability must be affirmatively pleaded pursuant to Rule

11

8(c).

Defendants' failure in this regard is far from fatal, however. "[A] district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003). Plaintiffs have not identified any reason why, on remand, the District Court should not allow defendants to raise their clear exemption as an affirmative defense and we cannot think of any. Nevertheless, if such a reason exists, plaintiffs deserve an opportunity to present their case to the District Court as it inevitably considers whether it would be appropriate to construe defendants' motion for summary judgment as a motion to amend their answer.

**CONCLUSION**

Accordingly, the judgment of the District Court is **AFFIRMED** in all respects, save for the District Court's dismissal of plaintiffs' claims under New York Labor Law § 190 *et seq.*, which is **VACATED**.

The cause is **REMANDED** to the District Court for proceedings consistent with this opinion.