In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3626

GREGORY STINNETT,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 709—**Amy J. St. Eve**, *Judge*.

ARGUED NOVEMBER 9, 2010—DECIDED JANUARY 4, 2011

Before POSNER, TINDER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Gregory Stinnett, an Ambulance Commander in the Chicago Fire Department, brought suit against the City, charging that its failure to promote him to Field Officer in the department's emergency medical services division discriminated against him because of his race (he is black), in violation of Title VII. The district judge granted summary judgment for the City.

Stinnett had taken the Field Officer promotional exam in 2000. An applicant's score on the exam, together with his seniority, determined his ranking on the 2000 Field Officer eligibility list. On the basis of his score and his seniority Stinnett was ranked 32. Two white Ambulance Commanders, Byrne and Kaveney, were ranked 29 and 31 respectively. Actually all three had identical scores on the exam, but Byrne and Kaveney had more seniority than Stinnett, which is why their composite scores exceeded his and thus propelled them above him on the eligibility list.

The number of names on the list exceeded the number of vacancies in the ranks of Field Officers. The fire department went to the list eight times to fill vacancies. The last time—February 16, 2007—the department promoted Byrne and Kaveney (number 30 on the list, having retired in the interim, was not promoted, making way for Byrne, number 29). Stinnett was next in line for promotion but the department made no more promotions from the 2000 list.

In December 2006, shortly before those promotions, the department had announced that there would be a new exam for promotion to Field Officer and that it would be given on March 23, 2007, five weeks after the last promotions (those of Byrne and Kaveney) from the old list. Stinnett took the new exam, and his score on it, combined with his seniority, placed him 48th on the 2007 Field Officer eligibility list. When he brought suit on February 1, 2008, he had not yet been promoted; and as far as we know, he still has not been. The month after he sued, the fire department promoted eleven Am-

bulance Commanders on the new eligibility list to Field Officer but not Stinnett, who was far down on the list. Those were the first promotions from the new list.

*McDonnell Douglas* entitles a plaintiff in a Title VII case to a trial if (so far as pertains to this case) he can show that he was qualified for a promotion but was denied it and instead a member of a different race who was "similarly situated" to him got the promotion, unless the defendant articulates (and the plaintiff fails to rebut) a nondiscriminatory reason for promoting that other person. The district judge cut off Stinnett at the threshold, ruling that Byrne and Kaveney were not similarly situated to Stinnett because they ranked higher than he on the 2000 eligibility list, and that the eleven Ambulance Commanders promoted ahead of him in 2008 (some of whom were white) were not similarly situated to him either, because they ranked higher than he on the 2007 eligibility list.

The precise meaning of "similarly situated" is critical in many employment discrimination cases in which the plaintiff is relying on the approach authorized by *McDonnell Douglas*, because if the term is defined too narrowly discrimination will go unremedied and if too broadly plaintiffs will be able to avoid summary judgment in the defendant's favor too easily. This case illustrates both dangers. The second involves Stinnett's effort to compare himself to all the whites promoted ahead of him. If everyone who qualifies for promotion to a particular position is deemed by virtue of that fact similarly situated to everyone else, then two requirements of the prima facie case authorized by *McDonnell Douglas*—

proof that the plaintiff was qualified for the position he sought and proof that he was similarly situated to the person who got the position in his place—collapse into one. The fact that Stinnett was not promoted even though he had done well enough on the exam to get on the 2000 eligibility list thus does not show that those promoted ahead of him were similarly situated to him, *Grayson v. City of Chicago*, 317 F.3d 745, 749 (7th Cir. 2003); *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 243 (6th Cir. 2005), especially since all of them ranked above him on the promotional lists. This could be compelling evidence that he was not similarly situated to them, *Jones v. City of Springfield*, 554 F.3d 669, 671-72 (7th Cir. 2009), though that would depend on how rigidly the employer was committed to hiring on the basis of an employee's position on the list, since other qualifications might outweigh a lower ranking. *Torgerson v. City of Rochester*, 605 F.3d 584, 596 (8th Cir. 2010). Still, it is at least clear that Stinnett was not *entitled* to be promoted ahead of competitors for promotion who ranked higher than he.

It would be different had he presented evidence that the promotional exams were biased in favor of whites, 42 U.S.C. § 2000e-2(k)(1)(A)(i); *Adams v. City of Chicago*, 469 F.3d 609, 613 (7th Cir. 2006), or that the scores on the exams had been altered, or the exams deliberately manipulated in some other way, to favor whites. *Brown v. Alabama Dep't of Transportation,* 597 F.3d 1160, 1176-77 (11th Cir. 2010). Such evidence would provide a route alternative to that of *McDonnell Douglas* to establishing a prima facie case of discrimination. Stinnett presented no such evidence.

But with respect to the promotion of Byrne and Kaveney—that is, comparing Stinnett only to those two and not to them plus whites promoted, also ahead of him, from the subsequent list—his case is different. There were vacancies in the ranks of the Field Officers when the fire department stopped filling vacancies from the 2000 list after promoting Byrne and Kaveney. Stinnett, the black man, was the next on the list. Had the department filled just one more vacancy from that list he would be a Field Officer today.

The district judge's ruling that Stinnett was not similarly situated to Byrne and Kaveney and therefore his case fails at the threshold takes too narrow a view of what it means to be similarly situated. Stinnett is not arguing that he should have been promoted ahead of Byrne or Kaveney; he does not question the legitimacy of a ranking system that placed him below them. His argument is that the department should not have stopped filling vacancies from the 2000 list when it reached his name. The employer had a well-established practice of filling a vacancy for Field Officer by promoting the highest-ranking person on the current eligibility list. This made Stinnett similarly situated to Byrne and Kaveney because the relevant similarity was the similarity of persons eligible for the next promotion. All three were eligible; all three would have been promoted had the department not stopped filling vacancies from the 2000 list the day they promoted Byrne and Kaveney. Indeed, Stinnett would have been promoted had the department filled one more vacancy from the 2000 list even if Byrne and Kaveney had been *vastly*

more qualified than he—of which there is no evidence; their higher positions on the list were due solely to their greater seniority and the record does not reveal how much greater that was; if they were more senior by just a few days or weeks that would not be evidence that they were better qualified for promotion than Stinnett.

Since, despite being similarly situated to Byrne and Kaveney, Stinnett was treated worse than either of them, and he is black and they are white, it behooved the City to give a reason or reasons for the difference in treatment. The reason it gave is that like other employers it does not use the same eligibility list till the end of time, for then new employees would never be eligible for promotion. Employers therefore update their eligibility lists from time to time. There is nothing invidious about such updating. *Deveraux v. City of Chicago*, 14 F.3d 328, 331 (7th Cir. 1994). It has no tendency to favor one racial or other protected group over another, though when an employer updates an eligibility list the ranking a person had on the previous list may change. By the end of 2006 the fire department's 2000 list was obsolete. The department wanted to change to a system in which a new exam would be given, and a new eligibility list compiled, every three years. Because of the time it would take, beginning in 2006, to design and administer a new exam, score the results, and compile a new eligibility list, promotions from a new list would not be made (as it turned out) until 2008. It thus was past time, in 2006 when the decision was made to create a new list, and February 2007, when the last promotions from

the old list were made, for a new list to be created from which to make all further promotions.

A black employee was next on the list to be promoted when the old list was shelved. But given the racial composition of that list, the fact that he was black and the two officers who were promoted just before the door slammed shut were white could easily have been due to chance. Of the 54 persons on the 2000 eligibility list, only 11 percent were black; the race of 2 percent is undisclosed, so the minimum percentage of nonblacks was 87 percent (87 percent + 2 percent + 11 percent = 100 percent) and the maximum percentage of blacks was 13 percent. This made the probability that two persons in a row who were promoted (Byrne and Kaveney) were not black at least 76 percent ($.87 \times .87$), and the probability that the next person on the list was black at most 13 percent. These probabilities do not support an inference of deliberately stopping short to prevent a black person from being promoted; in the terminology of *McDonnell Douglas* they do not show that the decision to make further promotions from a new list was a pretext (a lie) designed to conceal racial discrimination.

And because Byrne and Kaveney ranked above Stinnett on an eligibility list not contended to be racially biased, their being promoted ahead of him was not a suspicious circumstance either. It would be suspicious if when they were promoted there had been an additional vacancy that could have been filled at that time. But when Byrne and Kaveney were promoted there was final budgetary approval for only two promotions.

Later, money for additional ones became available, but later was after the deadline for registering to take the new exam, and all promotions were suspended until the exam was graded and a new eligibility list prepared. Although Byrne and Kaveney were promoted after it was decided to create a new eligibility list, the department had submitted a request for approval of two promotions to Field Officer before the decision to create a new list was made.

The new exam was administered in March 2007 and the last promotions (Byrne and Kaveney) from the old list were made in February. It would have been odd, given the new exam, to have continued filling vacancies from the old eligibility list, especially since the City's practice had been to promote Ambulance Commanders from the 2000 list only once each year and the promotions for 2007 had already been made. No additional promotions were made until the following March, when the new list was available.

The clincher is that Deputy Fire Commissioner Noy, who made the decision to stop promoting from the 2000 list in February 2007, testified that he hadn't yet been informed who was on the list, and so couldn't have known that the next person on the list was black. There was no credible evidence contradicting his testimony. The absence of such evidence is crucial because we give no weight to remarks by the district court and by the City in its brief that Noy is himself black, the suggestion being that a black supervisor should be presumed not to discriminate against a black

underling. That is not a proper presumption. *Castaneda v. Partida*, 430 U.S. 482, 499 (1977); *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 530 (7th Cir. 2003); see also *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78-79 (1998). A black supervisor might well yield to pressure to promote a white over a black, just as a male supervisor might well yield to pressure to increase the percentage of women in his division. Nevertheless, for the reasons we've explained, the judgment in favor of the employer must be

AFFIRMED.